IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RENEE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 07541 |
| | ) | |
| EMB, INC., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

## ORDER

For the reasons set forth in the Statement below, the defendant's motion to dismiss the Second Amended Complaint [12] is granted. Because further amendment would be futile, the dismissal is with prejudice. A final judgment will issue, and if she wishes to file an appeal, Ms. Smith must file a notice of appeal in this Court within 30 days.

## STATEMENT

Renee Smith worked for medical supply company EMB until August 2012. She held numerous positions over a seven-year period, including sales and billing. She claims that before she left, she suffered discrimination based on her gender and retaliation and was unfairly "led on" regarding the opportunities for her to earn money in a sales position. She claims that after she left, EMB "hinder[ed]" her ability to receive unemployment compensation.

According to Smith—whose factual allegations are taken as true for purposes of this motion—she complained about "discrimination" in a phone call to EMB general manager Craig McWilliams on August 11, 2011.[1] A year later, in August 2012, Ms. Smith spoke to Mr. Williams about her need to make more money than the $16 per hour she was making writing procedural manuals. They discussed transitioning her into a commission-based position. Despite Smith's request, McWilliams did not put an agreement in writing. On August 15, 2012, Smith says that she was told to "go to unemployment," which she interpreted as being fired. The following day, the owner of EMB took her out to breakfast and offered her a position working on a 100% commission basis, a position Ms. Smith found untenable because she needed regular wages until the first commissions came in. When Smith applied for unemployment benefits, EMB represented that she had voluntarily left the company, and she was denied benefits. Smith maintains that she never would have quit the job because her wages were being garnished to satisfy a debt, and she needed her paycheck. While she was working at EMB, Ms. Smith believed that, based upon her experience, she was underpaid for authoring training manuals.

---

[1] Ms. Smith does not give the details of this alleged discrimination, but materials attached to her pleadings suggest it had to do with not being paid enough relative to other employees.

According to Smith, EMB paid higher salaries to inferior male employees, some of whom she had trained.

EMB moves to dismiss the complaint on the grounds that Smith's claims are untimely. In support it points to materials attached to Smith's original complaint showing that she made a charge of discrimination on June 8, 2012, and received a right-to-sue notice on June 21, 2012. Smith's original complaint in this case was filed on September 20, 2012. To be actionable, a claim must be based upon events that occurred within 300 days of the filing of the administrative charge; otherwise, the claim is time-barred. *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013). EMB contends that Smith has not claimed any actionable discrimination that occurred after August 13, 2011—the start of the 300-day window before the June 8, 2012 charge. Smith complained to McWilliams about being underpaid two days earlier.

Ms. Smith concedes that the defendants have correctly stated the procedural history of her case and the underlying charge. Response Br., Dkt. # 17 at 1. She invokes the "continuing violation" doctrine as a basis for considering actions that occurred outside the 300-day window preceeding June 8, 2012. She argues that the discrimination began with the hiring of Craig McWilliams "before August 11, 2011" and "continued within the limitation period." She cites as the latest date of discrimination September 14, 2013 (over a year after she left the company), when EMB allowed a departing male employee to obtain unemployment benefits after he "quit because he was not making enough money."

EMB does not respond to Ms. Smith's continuing violation argument, but the Court nevertheless finds it to be lacking in merit. Discrete unlawful employment actions, such as firings or failures to promote, must occur with the 300-window preceding an administrative charge. *Lavalais*, 734 F.3d at 633. A "continuing violation," in the form of a discrete act the causes continuing harm, must also be charged within 300 days of that act. *Bass v. Joliet Public Sch. Dist. No. 86*, ---F.3d----, 2014 WL 1229578 (7th Cir. Mar. 26, 2014). It is only a "cumulative violation"—which arises "when it is not immediately apparent that the law is being violated"—that permits a plaintiff to delay the charge until a series of wrongful acts blossoms into an injury on which suit can be brought. *Id.* In this case, Smith alleges that she complained about "discrimination" on August 11, 2011; to the extent she wishes to bring a claim premised on that same "discrimination," it is untimely. Smith does not state that the discrimination did not "blossom" until something else happened; indeed, her August 2011 complaint to McWilliams shows that she was aware then a possible violation. . The alleged retaliation for her complaint about that discrimination, however, did not occur until August 2012, well within the 300-day period. The retaliation claim would not be untimely, therefore, nor would a discrimination claim based upon those same actions. Thus, the 300-day time bar applies only to any discrete discriminatory acts occurring before August 13, 2011—namely, whatever "discrimination" Smith complained of on August 11 of that year.

No matter. EMB also argues that all claims are time-barred because Ms. Smith failed to bring this lawsuit with 90 days of receiving the right-to-sue notice. *See Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir 2004) (claims are waived if not brought within 90 days of receiving that right-to-sue letter). She filed her lawsuit 92 days after receiving the right-to-sue notice on June 21, 2012. Again, Ms. Smith admits this procedural history. She does not give any

reason why the 90-period should not be strictly enforced, and the continuing-violation doctrine does not have any effect on the 90-day period to sue.

Still, the 90-day period is not a jurisdictional requirement, and equitable tolling is permitted. *See Lee v. Cook County*, 635 F.3d 969, 972 (7th Cir. 2011) (applying equitable tolling analysis to 90-day period to file suit for employment discrimination). Here, Ms. Smith requests a "grace period," but she does not set forth any "extraordinary circumstance" that prevented a timely filing. *See id.* The Court therefore lacks any basis for overlooking the failure to file suit within 90 days. And even if tolling were warranted in this case, it would be futile, because Ms. Smith also fails to state any claim for relief.[2]

A discrimination complaint must aver that the employer instituted a specific adverse employment action on the basis of the plaintiffs' gender, race, or other protected category. *See Lavalais v. Village of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). A plaintiff alleging employment discrimination "may allege these claims quite generally." *Tamayo*, 526 F.3d at 1081; *see also Lavalais*, 734 F.3d at 633 (explaining that pleading a simple discrimination claim does not require the degree of specificity that more complex claims are held to). There are no particularized pleading requirements for employment discrimination claims. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). However, all complaints must contain sufficient facts to raise the plaintiffs' right to relief above a speculative level and state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 669 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Even under a liberal pleading standard, Smith fails to state a claim for employment discrimination or retaliation. She does not plausibly allege that any adverse employment action was taken against her *because of* her gender. She claims that she was fired; accepting this as true (despite Smith's somewhat contrary allegations that EMB believed that she had quit her job), she does not point to any facts to suggest that her gender had anything to do with the termination. The only other adverse action she alleges is that the owner of EMB offered her a commission-based position the day after she was "fired" from her existing role. Ms. Smith might have viewed this as a demotion, given her need for regular wages, but she does not allege any facts to support her claim that her gender figured into that action in any way. To the extent that Ms. Smith asserts that EMB's owner, Larry Chudnow, "exemplifies great favor toward male employees," she does not identify any facts from which discrimination could be inferred. She names three male employees and their pay rates; presumably, she means to imply that they were paid more than she was. But without more information—such as whether these employees had the same job as Smith—it is no more plausible that that the disparity is related to her gender than any other reason. One of the men she compares her salary to is her former manager, Craig McWilliams;

---

[2] In the context of their timeliness arguments the defendant refers to the substantive inadequacy of Ms. Smith's pleadings, but it does not develop the argument. Because Ms. Smith is litigating *in forma pauperis*, however, this Court may dismiss the complaint at any time it determines she fails to state a claim for relief. 28 U.S.C. § 1915(e)(2); *Luevano*, 722 F.3d at 1022.

there is no discriminatory inference to be drawn from her boss receiving a higher salary. Although it is not Ms. Smith's burden to specifically plead that "similarly situated" employees were treated more favorably than she, she must allege some facts that lend plausibility to her claim that she was paid less because of her gender.

As for her retaliation claim, it relies upon a highly speculative conclusion that difficulties she had with her employer in August 2012 were retaliation for a complaint she made a year earlier. There are no facts alleged that connect the allegedly retaliatory actions to her prior discrimination complaint. The year-long lapse of time is not indicative of any causal relationship, and Ms. Smith does not point to anything else from such one could be reasonably inferred.

It is clear from her filings that Ms. Smith believes she was ill-treated by EMB after she devoted several years to the company in various capacities. Notwithstanding that sincerely held belief, Ms. Smith has failed to set forth a timely and plausible claim of employment discrimination or retaliation. Because the claims are also untimely, the Court determines the further amendments should not be permitted to address the insufficient factual basis for the claims; the dismissal is with prejudice.

Date: March 31, 2014

John J. Tharp, Jr.
United States District Judge